**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAMSI KAKARLA,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>ZUORA, INC., TIEN TZUO, JASON PRESSMAN, OMAR ABBOSH, SARAH BOND, LAURA CLAYTON MCDONNELL, KEN GOLDMAN, AMY GUGGENHEIM SHENKAN, TIM HALEY, JOHN D. HARKEY, JR., and JOE OSNOSS,<br><br>　　　　　　　Defendants. | Case No.: 3:24-cv-8620<br><br>**Complaint For:**<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Vamsi Kakarla ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.　Plaintiff brings this stockholder action against Zuora, Inc. ("Zuora" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,"

collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Silver Lake Group, LLC ("Silver Lake") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in an October 18, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Zuora stockholders will receive $10.00 per share in cash in a deal valued at approximately $1.7 billion.

3. Thereafter, on November 25, 2024, the Company filed a Preliminary Proxy Statement on Form PREM14A with the SEC in support of the Proposed Transaction (the "Proxy Statement").

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: (a) Company insiders own Company Options, RSU awards, PUS Awards and other equity awards, all of which are subject to conversion into merger consideration; and (b) certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5. The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction and is thus in violation of the Exchange Act. As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Zuora, provided by Zuora management to the Company Board, the Special Committee of the Board of Directors (the "Special Committee"), and the Board's financial advisor,

Qatalyst Partners LP ("Qatalyst"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Qatalyst if any, and provided to the Company and the Special Committee.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

**PARTIES**

7. Plaintiff is a citizen of Michigan, and at all times relevant hereto, has been a Zuora stockholder.

8. Defendant Zuora provides a monetization suite for modern businesses to help companies launch and scale new services and operate dynamic customer-centric business models. The Company is incorporated in Delaware and has its principal place of business at 101 Redwood Shores Parkway, Redwood City, CA 94065. Shares of Zuora common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "ZUO."

9. Defendant Tien Tzuo ("Tzuo") has been Chairman of the Company at all relevant times. In addition, Defendant Tzuo is the Company's Founder and serves as its Chief Executive Officer ("CEO").

10. Defendant Jason Pressman ("Pressman") has been a director of the Company at all relevant times. In addition, Defendant Pressman was appointed as a member of the Special Committee.

11. Defendant Omar Abbosh ("Abbosh") has been a director of the Company at all relevant times.

12. Defendant Sarah Bond ("Bond") has been a director of the Company at all relevant times.

13. Defendant Laura Clayton McDonnell ("McDonnell") has been a director of the Company at all relevant times. In addition, Defendant McDonnell was appointed as a member of the Special Committee.

14. Defendant Ken Goldman ("Goldman") has been a director of the Company at all relevant times.

15. Defendant Amy Guggenheim Shenkan ("Shenkan") has been a director of the Company at all relevant times.

16. Defendant Tim Haley ("Haley") has been a director of the Company at all relevant times. In addition, Defendant Haley was appointed as a member of the Special Committee.

17. Defendant John D. Harkey, Jr. ("Harkey") has been a director of the Company at all relevant times.

18. Defendant Joe Osnoss ("Osnoss") has been a director of the Company at all relevant times.

19. Defendants identified in ¶¶ 9 - 18 are collectively referred to as the "Individual Defendants."

20. Non-Party Silver Lake is a technology investment firm.

**JURISDICTION AND VENUE**

21. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

**SUBSTANTIVE ALLEGATIONS**

*Company Background*

24. Zuora provides cloud revenue management solutions for life sciences and high-tech companies in the United States and internationally.

25. In a press release on August 21, 2024, for the Second Quarter 2025 Financial Results, the Company highlighted its performance results and financial success. For example: Subscription revenue was $104.1 million, an increase of 9% year-over-year; total revenue was $115.4 million, an increase of 7% year-over-year; net cash provided by operating activities was $11.4 million, compared to net cash provided by operating activities of $5.4 million in the second quarter of fiscal 2024; and adjusted free cash flow was $12.2 million compared to $4.0 million in the second quarter of fiscal 2024.

26. Speaking on the results, Defendant CEO Tien Tzuo stated, "In the second quarter, we reached our goal to operate at a Rule of 30 two quarters ahead of plan."

27. These financial results are not an anomaly, but rather, are indicative of a trend of continued success by Zuora. Based upon these positive results and outlook, the Company is likely to have future success.

28. Despite this upward trajectory, the Individual Defendants have caused Zuora to enter into the Proposed Transaction without providing requisite information to Zuora stockholders such as Plaintiff.

*The Flawed Sales Process*

29. As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company.

30. Of significant note, Defendant Tzuo and his affiliates (together the "CEO Rollover Stockholders"), will be treated differently than all other stockholders of Zuora, including Plaintiff. Specifically, the CEO Rollover Stockholders will be allowed to roll over their equity into the new entity, allowing the CEO Rollover Stockholders to continue to reap the benefits of their

investments while all other stockholders of the Company, such as Plaintiff, are frozen out of their ownership interests. Notably, the Preliminary Proxy Statement fails to provide information justifying this decision.

31. The Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Silver Lake, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

32. Further, the Proxy Statement fails to adequately disclose any and all of the communications regarding post-transaction employment during the negotiation of the underlying transaction which must be disclosed to stockholders.

33. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

34. On October 18, 2024, Zuora and Silver Lake issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> REDWOOD CITY, Calif.--(BUSINESS WIRE)-- Zuora, Inc. (NYSE: ZUO), a leading monetization suite for modern business, today announced that it has entered into a definitive agreement to be acquired by Silver Lake, the global leader in technology investing, in partnership with an affiliate of GIC Pte. Ltd. ("GIC"), in a transaction valued at $1.7 billion. Upon completion of the transaction, Zuora will become a privately held company.
>
> Under the terms of the agreement, Silver Lake and GIC will acquire all outstanding shares of Zuora common stock for $10.00 per share in cash. The purchase price represents an 18% premium to the Company's unaffected closing stock price [1] and a 20% enterprise value [2] premium. The agreement was unanimously approved and recommended to the Zuora Board of Directors by a Special Committee consisting of independent directors of the Board, Jason Pressman, John D. Harkey, Jr., Laura Clayton McDonnell and Tim Haley. Following the Special Committee's recommendation, the agreement has been unanimously approved and recommended for approval by stockholders by the Zuora Board.

"Since our founding, Zuora has evangelized the shift to the Subscription Economy and evolution to complex revenue models, providing technology necessary to monetize products and services," said Tien Tzuo, Zuora's Founder, CEO and Chairman of the Board. "As a private company, with the support and expertise of Silver Lake and GIC, our monetization suite will continue to lead in the marketplace. We look forward to entering this next phase of growth alongside Silver Lake, GIC and our team of ZEOs."

"Our agreement with Silver Lake and GIC represents the culmination of a comprehensive process to determine the best path to maximizing value for Zuora stockholders," said Jason Pressman, Chair of the Special Committee and Lead Independent Director of Zuora's Board of Directors. "Our review of potential strategic alternatives for the Company was led by a Special Committee composed of independent directors and advised by independent legal and financial advisors. We are pleased to have reached an agreement that will deliver significant, immediate and certain value to Zuora's stockholders."

"After recently joining the Zuora Board of Directors, I was pleased to have the opportunity to serve on the Special Committee," said Mr. Harkey, an independent director of Zuora's Board of Directors and member of the Special Committee. "The Special Committee and its advisors contacted over 30 parties including both financial sponsors and strategic buyers and conducted detailed due diligence with more than 10 parties. The Silver Lake and GIC proposal represents the only, final, fully-financed proposal received by Zuora, which was reviewed by the Special Committee, evaluated against Zuora's standalone prospects, future outlook and growth plans, and other strategic and financial alternatives. We recommended this proposal because we believe it offers the best, risk-adjusted value for Zuora's stockholders."

"This investment underscores our confidence in Zuora as the clear leader of monetization solutions for modern recurring revenue businesses," said Joe Osnoss, Managing Partner at Silver Lake and Mike Widmann, Managing Director at Silver Lake. "Building upon our long-term partnership with GIC, we look forward to collectively supporting management as they continue to deliver solutions that enable their more than 1,000 customers to unlock and grow customer-centric business models."

"Zuora's best-in-class software powers the revenue engines for many of the largest and most exciting companies today," said Choo Yong Cheen, Chief Investment Officer of Private Equity at GIC and Eric Wilmes, Head of Private Equity, Americas at GIC. "With rapid growth in the Subscription Economy, company requirements are becoming increasingly complex. Having established the category, Zuora's products and experience position it for continued market leadership. We are thrilled to work alongside Zuora's impressive management team and our partner, Silver Lake, to support the business in its next phase of growth."

**Transaction Details**

The transaction is expected to close in the first calendar quarter of 2025, subject to customary closing conditions and approvals, including the receipt of required regulatory approvals; approval by a majority of the voting power of the outstanding capital of Zuora held by unaffiliated holders; and approval of a majority of the Company's Class A common stock and a majority of the Company's Class B common stock, each voting as separate classes. The transaction is not subject to a financing condition.

Tien Tzuo, Zuora's Founder, CEO and Chairman of the Board, will roll over a majority of his existing ownership. As a continuing investor in Zuora, Mr. Tzuo will remain focused on ensuring that Zuora is best positioned for long-term success. Upon completion of the transaction, Zuora's common stock will no longer be listed on any public stock exchange. Mr. Tzuo will continue to lead the Company, which will maintain its headquarters in Redwood City.

Further information regarding terms and conditions contained in the definitive transaction agreements will be made available in Zuora's Current Report on Form 8-K, which will be filed in connection with this transaction.

*Potential Conflicts of Interest*

35. The breakdown of the benefits of the deal indicates that Zuora insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Zuora.

36. Additionally, Company insiders currently own large amounts of Company Options, RSU awards, PSU awards, and other equity awards, some of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Name | Shares Underlying Zuora Options[1][4] Number of Shares (#) | Value ($) | Shares Underlying Zuora RSUs[2][4] Number of Shares (#) | Value ($) | Shares Underlying Zuora PSU Awards[3][4] Number of Shares (#) | Value ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| **Non-Employee Directors** | | | | | | | |
| Jason Pressman | — | — | 19,230 | 192,300 | — | — | 192,300 |
| Omar Abbosh | — | — | 19,230 | 192,300 | — | — | 192,300 |
| Sarah R. Bond | — | — | 19,230 | 192,300 | — | — | 192,300 |

| Name | | | | | | | |
|---|---|---|---|---|---|---|---|
| Laura Clayton McDonnell | — | — | 19,230 | 192,300 | — | — | 192,300 |
| Kenneth A. Goldman | 75,000 | 507,000 | 19,230 | 192,300 | | | 699,300 |
| Amy Guggenheim Shenkan | — | — | 19,230 | 192,300 | — | — | 192,300 |
| Timothy Haley | — | — | 19,230 | 192,300 | — | — | 192,300 |
| John D. Harkey, Jr | — | — | 40,567 | 405,670 | — | — | 405,670 |
| Joseph Osnoss | — | — | 27,904 | 279,040 | — | — | 279,040 |
| **Executive Officers** | | | | | | | |
| Tien Tzuo(5) | 362,406 | 746,556 | 529,169 | 5,291,690 | 600,000 | 6,000,000 | 12,038,246 |
| Todd E. McElhatton | — | — | 414,800 | 4,148,000 | 300,000 | 3,000,000 | 7,148,000 |
| Robert J. E. Traube | — | — | 426,942 | 4,269,420 | 300,000 | 3,000,000 | 7,269,420 |
| Andrew M. Cohen | — | — | 190,834 | 1,908,340 | 150,000 | 1,500,000 | 3,408,340 |
| Peter D. Hirsch(6) | — | — | 375,000 | 3,750,000 | 300,000 | 3,000,000 | 6,750,000 |

37. Moreover, certain employment agreements with certain Zuora executives entitle such executives to severance packages, should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

**Golden Parachute Compensation**

| Name | Cash Severance ($)(1) | Equity ($)(2)(3) | Perquisites / Benefits ($)(4) | Total ($) |
|---|---|---|---|---|
| Tien Tzuo | 2,092,350 | 11,291,670 | 45,000 | 13,429,040 |
| Todd E. McElhatton | 796,875 | 7,148,000 | 16,000 | 7,960,875 |
| Robert J. E. Traube | 895,082 | 7,269,420 | 49,000 | 8,213,502 |
| Andrew M. Cohen | 597,814 | 3,408,340 | 45,000 | 4,051,154 |
| Peter D. Hirsch | 717,049 | 6,750,000 | 32,000 | 7,499,049 |

38. The Proxy Statement fails to adequately all communications regarding post-transaction employment during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

39. Thus, while the Proposed Transaction is not in the best interests of Zuora, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Proxy Statement*

40. The Zuora Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, fails to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*<u>Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction</u>*

41. The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy Statement fails to disclose:

   a. Defendant Tzuo and his affiliates (together the "CEO Rollover Stockholders"), will be treated differently than all other stockholders of Zuora, including Plaintiff. Specifically, the CEO Rollover Stockholders will be allowed to roll over their equity into the new entity, allowing the CEO Rollover Stockholders to continue to reap the benefits of their investments while all other stockholders of the Company, such as Plaintiff, are frozen out of their ownership interests. The Preliminary Proxy Statement fails to provide information justifying this decision;

   b. Whether the confidentiality agreements entered into by the Company with Silver Lake differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

   c. All specific conditions under which any standstill provision contained in any confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Boeing, would fall away; and

      d.      Any and all of the communications regarding post-transaction employment during the negotiation of the underlying transaction which must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Zuora Financial Projections*

42. The Proxy Statement fails to provide material information concerning financial projections for Zuora provided by Zuora management to the Company Board and Qatalyst and relied upon by Qatalyst in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

43. Notably, the Proxy Statement reveals that as part of its analyses, Qatalyst reviewed: "the Management Projections (as defined in the section of this proxy statement captioned."

44. The Proxy Statement should have, but fails to provide, certain information in the projections that Zuora management provided to the Company Board and Qatalyst. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

45. With regard to the *Management Projections*, the Proxy Statement fails to disclose:
   a. Revenue, including the inputs, metrics, and assumptions used to determine same;
   b. Non-GAAP Operating Income, including the inputs, metrics, and assumptions used to determine same;
   c. Adjusted Free Cash Flow, including the inputs, metrics, and assumptions used to determine same; and
   d. Unlevered Free Cash Flow, including the inputs, metrics, and assumptions used to determine same.

46. The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

47. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

48. Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Qatalyst's financial analyses, or make an informed decision whether to vote his shares in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Qatalyst*

49. In the Proxy Statement, Qatalyst describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

50. With respect to the *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose:

   a. The inputs, metrics, and assumptions used to determine the perpetuity growth rates ranging from 3.5% to 5.5% utilized;

   b. The inputs, metrics, and assumptions used to determine the discount rates of 11.5% to 13.5% utilized;

   c. The inputs, metrics, and assumptions used to determine the UFCF multiples range of 12.0x to 19.0x utilized; and

   d. The weighted average cost of capital for the Company utilized.

51. With respect to the *Selected Companies Analysis*, the Proxy Statement fails to disclose:

   a. The enterprise value ("EV") for each of the selected companies analyzed;

   b. The inputs, metrics, and assumptions used to determine the CY2025E revenue multiples range of 2.0x to 4.0x utilized; and

   c. The inputs, metrics, and assumptions used to determine the CY2025E LFCF multiples range of 11.0x to 18.0x utilized.

52. With respect to the *Selected Transactions Analysis*, the Proxy Statement fails to disclose:

   a. The enterprise value ("EV") for each of the selected transactions analyzed;

   b. The date upon which each of the selected transactions closed;

   c. The specific inputs, metrics, and assumptions used to determine the NTM Revenue multiples range of 2.5x to 5.0x utilized;

   d. The specific inputs, metrics, and assumptions used to determine the NTM LFCF multiples range of 13.0x to 22.0x utilized; and

   e. The number of fully diluted shares of Zuora common stock outstanding utilized.

53. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

54. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Zuora stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

55. Plaintiff repeats all previous allegations as if set forth in full herein.

56. Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

57. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

58. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

59. The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that

the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

60. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

61. The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

62. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

63. Plaintiff repeats all previous allegations as if set forth in full herein.

64. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

65. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual

Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

66. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Zuora's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

67. The Individual Defendants acted as controlling persons of Zuora within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Zuora to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Zuora and all of its employees. As alleged above, Zuora is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

    A.    Enjoining the Proposed Transaction;

    B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

    C.    Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein

not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: December 2, 2024

**BRODSKY SMITH**

By: *Evan J. Smith*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*